UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON FARNSWORTH and
TYRONE WILLIAMS,

        Plaintiffs,                            No. 17-10966

v.                                               District Judge Robert H. Cleland
                                                  Magistrate Judge R. Steven Whalen

CAREY JOHNSON,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

      Plaintiffs Brandon Farnsworth and Tyrone Williams, prison inmates in the custody of the Michigan Department of Corrections ("MDOC"), have filed a *pro se* civil complaint under 42 U.S.C. § 1983 [Dkt. #1]. Before the Court is Defendant Carey Johnson's Motion for Summary Judgment on the Basis of Exhaustion [Dkt. #20], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be DENIED WITHOUT PREJUDICE.

                                              **I.   FACTS**

      On March 27, 2017, Plaintiffs filed their complaint. Because the complaint was vague and imprecise as to the nature and basis of their claims, the Court ordered them to show cause why it should not be dismissed under 28 U.S.C. § 1915(e)(2).[1] Plaintiff Williams responded to the show cause order on September 11, 2017 [Dkt. #7], and

---

[1] In forma pauperis complaints are subject to screening under 28 U.S.C. § 1915(e)(2), and may be summarily dismissed if they are frivolous or fail to state a claim on which relief can be granted.

Plaintiff Farnsworth responded on September 14, 2017.  Both Plaintiffs provided specific facts supporting their claims, and on May 17, 2018, the Court vacated the show cause order [Dkt. #13] and ordered that the Defendant be served by the U.S. Marshal [Dkt. #14].

Defendant Williams alleges that on July 26, 2016, he received a misconduct ticket. A hearing was held the following day, and the charge was dismissed. *Williams' Statement of Facts* [Dkt. #7], ¶¶ 1-2.  Subsequently, Defendant Johnson told him that she intended to request a rehearing of the dismissal because she was tired of him being found guilty of her misconduct reports.  *Id*. ¶ 3.  However, the "rehearing" was dismissed because there were no institutional procedures for prison staff to request a rehearing.  *Id*. ¶ 4.

Plaintiff Williams alleges that after this, Johnson started spreading rumors about his sexual orientation, claiming that he had been pressing Plaintiff Farnsworth for sex and money.  This caused Williams problems with other inmates in his unit, and tarnished his reputation as a representative to the Warden's Forum.  *Id*. ¶ 5.  Williams wrote to the Deputy Warden of the housing unit in an attempt to resolve the problem but did not receive a response.  *Id*. ¶ 6.  Plaintiff Williams decided to quit his position as unit representative, and sought to be transferred to another unit (the E-unit).  *Id*. ¶ 7. Two days after he was transferred, Defendant Johnson approached him and loudly threatened that he could "not run from her and she would get the last laugh."  She said that "Farnsworth is a fag and I just want to press the guy."  Eventually, one of the officers asked her to leave "before she upset his unit with her statements."  *Id*. ¶ 8.

Plaintiff Williams states that on October 3, 2016, he filed an administrative grievance against Johnson.  On October 17, 2016, he was interviewed by a Step I respondent, who denied the grievance at Step I.  *Id*. ¶¶ 10-11.  Williams states that

pursuant to policy, he requested a Step II grievance form from the Grievance Coordinator. However, it turned out the that Acting Grievance Coordinator was Defendant Johnson, who was the subject of his grievance. He states that Johnson did not respond to his request for a Step II grievance form. *Id*. ¶ 12. Williams happened to see Johnson passing by his unit, and he asked her about not receiving the Step II form. He alleges that Johnson replied, "Shit happens." When Williams told her that he would file a lawsuit, Johnson told him that he would not be at that facility long enough to do so because he was going to be transferred. *Id*. ¶ 13. He was in fact transferred on October 25, 2016, but returned the same day. *Id*. ¶ 15. The next morning, he alleges, Johnson saw him and told him that she would use all of her powers "to have [him] transferred ASAP." *Id*. On February 10, 2017 he was transferred to the Lakeland Correctional Facility. *Id*. ¶ 17.

In Plaintiff Farnsworth's response to the show cause order [Dkt. #8], he alleges he was sexually assaulted by Defendant Johnson a number of times, including instances where she would grab his genitals, as well as verbal harassment and commenting on his sexual preference. *Farnsworth's Response* [Dkt. #8], Pg. ID 40. He states that he filed a grievance against Johnson on September 26, 2016, but the grievance was denied at Step I. *Id*. Pg. ID 40-41. He states that Johnson became the Grievance Coordinator on October 3, 2016. *Id*. Farnsworth wrote to the Warden but received no response. He states that after he filed another grievance, Johnson approached him and said, "You are going to wish you never put that complaint in on me, fag boy." *Id*. Pg. ID 41. He also says that he received threats from other inmates regarding his complaints against Johnson. *Id*., Pg. ID 41-42.

Attached to Farnsworth's response as Exhibit A is a photocopy of a Step I grievance form in which he complains of Johnson's sexual harassment.  In the grievance form, Farnsworth states that he attempted to resolve the issue with Johnson on September 26, 2016, but Johnson "refused to reply."  The form does not have a grievance identifier number, nor does it indicate that there was a Step I response.  Exhibit D to Farnsworth's response is a letter he wrote to an Inspector, dated October 10, 2016, in which he refers to the grievance he filed against Johnson on September 26.  He states:

> "This grievance was rejected by this officer as she was the acting grievance coord. at the time.  C/O Johnson rejected my grievance and instead of returning back to me the original copies of the grievance along with a signature of the supervisor who also reviewed the reasons for the rejection, I was sent back a photo-copy of the two page of the grievance that I filed on C/O Johnson, along with a note/letter stating the following: Your pres. grievance is denied because it contains issues other than sexual abuse/harassment...."

The letter also complains that Johnson violated MDOC policy by participating in the issue of the grievance even though she was the person being grieved.

In her motion, Defendant Johnson claims that neither Williams nor Farnsworth exhausted any grievance against her through Step III of the MDOC's administrative process.  Both Plaintiffs concede that they did not pursue grievances through Step III, but argue that they were precluded from doing so because Johnson, who was improperly serving as the Acting Grievance Coordinator, stymied their efforts to pursue their grievances, including denying them access to the grievance forms and not processing their grievances.

## II.   STANDARD OF REVIEW RE: EXHAUSTION

Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such

-4-

administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.*, 548 U.S. at 90. Thus, whether a mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]'–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

A dismissal for failure to exhaust is without prejudice. *Knuckles El v. Toombs,* 215 F.3d 640 (6th Cir.2000); *McCloy v. Correctional Medical Services*, 794 F.Supp.2d 743, 751 (E.D.Mich. 2011).

### III. DISCUSSION

Defendant seeks dismissal on the theory that Plaintiff failed to properly exhaust his administrative remedies before filing suit.

MDOC Policy Directive (PD) 03.02.130 provides prison inmates a detailed procedure for bringing forward complaints.[2] This grievance procedure consists of four acts an inmate must undertake before seeking judicial review, each with specific time limits. First, within two business days after becoming aware of a grievable issue, the inmate must attempt to verbally resolve the dispute with those involved. If such an attempt is not possible, or if it is unsuccessful, the inmate must then file a Step I grievance form within five days. The prison staff is required to respond in writing within 15 days, unless an extension is granted by the grievant. If the inmate is not satisfied with

---

[2] PD 03.02.130 is reproduced in Exhibit A to Defendants' Motion.

the response, he must request a Step II appeal form and file it within ten days after receiving the Step I response.

If the inmate is dissatisfied with the result at Step II, he or she has ten business days to appeal to Step III. The Step III appeal is handled by the MDOC Director or his designee at the Prisoner Affairs Section, Office of Program Services, in Lansing, Michigan. The Step III response concludes the standard administrative process.

The Plaintiffs do not dispute that they did not pursue their grievances against Johnson through Step III. However, they claim that their failure to do so was the result of Johnson's improper assumption of the role of Grievance Coordinator, in which she actively interfered with their ability to proceed with their grievances, including not providing the proper MDOC forms to pursue appeals of their grievances.

In *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Supreme Court reaffirmed the principle that under the PLRA, exhaustion is mandatory and that there is no "special circumstances" exception to the exhaustion requirement. *Id*. at 1858. However, the Court went on to discuss the single textual exception to exhaustion contained in the PLRA–that an inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Id*. Noting that circumstances where an administrative remedy is unavailable "will not often arise," *Ross* delineated "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id*. at 1859.

First, an administrative remedy will be deemed unavailable where prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. The Court offered the following example:

> "Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office–but in practice that

> office disclaims the capacity to consider those petitions. the procedure is not then 'capable of use' for the pertinent purpose." *Id*.

Secondly, a remedy is not available if the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. In other words, "when a remedy is...essentially 'unknowable'–so that no ordinary prisoner can make sense of what it demands–then it is also unavailable." *Id*.

Third, a remedy will be deemed unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860. It is this third category that comes into play in the present case. "If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action." *Betty v. McKee*, 2019 WL 140194, at *7 (W.D. Mich. Jan. 9, 2019)(citing *Ross v. Blake*).

Both Williams and Farnsworth allege that Defendant Johnson, who was the subject of their grievances, improperly acted as the Acting Grievance Coordinator under the governing Policy Directive. They are correct as to the mandate of PD 3.02.130(U), which provides:

> "Prisoners and staff who may be involved in the issue being grieved shall not participate in any capacity in the grievance investigation, review, or response, except as necessary to provide information to the respondent."

In addition, Plaintiffs have alleged fact that, if true, would show that Johnson interfered with their ability to pursue the grievance process to conclusion, thereby rendering the grievance procedure "unavailable" and excusing the PLRA's exhaustion requirement. Failure to comply with a prisoner's request for the appropriate grievance appeal forms can interfere with the ability to exhaust to the extent that the administrative

remedy is unavailable within the meaning of *Ross v. Blake*. *See Young v. Jackson*, 2013 WL 8178397, at *8-9 (E.D. Mich. Nov. 13, 2013), report and recommendation adopted, 2014 WL 42727 (E.D. Mich. Aug. 29, 2014)(denying dismissal based on exhaustion, Court finds that defendants "have a duty to follow MDOC policy and provide prisoners with Grievance Appeal forms when so requested"); *Graham v. Chicowski*, 2017 WL 3097803, at *4 (E.D. Mich. Apr. 18, 2017), report and recommendation adopted, 2017 WL 3085782 (E.D. Mich. July 20, 2017)(same).

It is important to recognize that exhaustion is an affirmative defense, with the burden of proving non-exhaustion falling on the Defendant. *Jones v. Bock*, 549 U.S. 199, 216 (2007). "This affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants." *Palmer v. Flore*, 3 F. Supp. 3d 632, 637 (E.D. Mich. 2014)(citing *Jones v. Bock*). If the Plaintiffs plead facts that plausibly show they were blocked in their attempt to complete the exhaustion process, dismissal at this stage of the proceedings would be improper. "Even if prison officials meet their burden of establishing non-exhaustion, summary judgment may be denied if a prisoner has demonstrated that a genuine issue of material fact exists as to whether [defendants] improperly prevented [him] from exhausting his administrative remedies." *Bonner v. Washington*, 2018 WL 4854105, at *3 (E.D. Mich. June 6, 2018), report and recommendation adopted, 2018 WL 3629025 (E.D. Mich. July 31, 2018)(internal citations omitted); *see also Lewis v. Axley*, 2017 WL 673916, at *3 (W.D. Mich. Jan. 20, 2017), report and recommendation adopted, 2017 WL 661513 (W.D. Mich. Feb. 17, 2017)("Defendant...states that he would never have refused to process a grievance. Plaintiff's verified complaint makes the opposite claim. In the opinion of the undersigned, a question of fact exists regarding whether Plaintiff was prohibited from exhausting his

claims."). In *Surles v. Andison*, 678 F.3d 452, 457–58 (6th Cir. 2012), the Court, noting that "a dispute of material fact exists as to whether Defendants or other MDOC employees prevented [Plaintiff] from filing grievances and exhausting his administrative remedies," concluded,

> "Defendants bore the burden of production and persuasion on the issue of exhaustion. They did not present evidence that shows the absence of a genuine dispute of fact as to whether Surles exhausted his administrative remedies. Therefore, Defendants were not entitled to summary judgment on the issue."

As this case moves forward with factual discovery, Defendant Johnson may or may not prevail on the exhaustion issue or the underlying substantive issues. At this stage of the proceedings, however, there remains a question of fact as to whether she improperly interfered with these Plaintiffs' ability to exhaust their administrative remedies. Therefore, her current motion for summary judgment on the basis of exhaustion should be denied without prejudice. *See Miller v. Klee*, 2018 WL 1354473, at *8 (E.D. Mich. Feb. 23, 2018), report and recommendation adopted, 2018 WL 1326382 (E.D. Mich. Mar. 15, 2018)("Given that defendants bear the burden of proving that plaintiff did not properly exhaust his administrative remedies, the motion for summary judgment should be denied without prejudice"); *Payne v. Gifford*, 2017 WL 4329631, at *7 (S.D. Ohio Sept. 5, 2017), report and recommendation adopted, 2017 WL 4310543 (S.D. Ohio Sept. 28, 2017) ("It is entirely possible that, if the record were better developed, the Defendants would prevail on the non-exhaustion argument. However, the undersigned cannot recommend summary judgment or dismissal for failure to exhaust on the record presented, which remains too ambiguous to warrant entry of judgment on this basis.") (footnotes omitted) (citing *Surles*, 676 F.3d at 458)).

### IV. CONCLUSION

I recommend that Defendant Carey Johnson's Motion for Summary Judgment on the Basis of Exhaustion [Dkt. #20] be DENIED WITHOUT PREJUDICE.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); and *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: February 10, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 10, 2019, electronically and/or by U.S. mail.

                                     s/Carolyn M. Ciesla
                                     Case Manager to the
                                     Honorable R. Steven Whalen